MOSHINSKI v. KAY SALT CO.

1. MASTER AND SERVANT—PARTIAL DISABILITY—COMPENSATION.

Where an injured employee at the time of his injury was earning an average weekly wage of $25, and, for the period covered by the hearing, was earning an average weekly wage of $22.31, an award by the industrial accident board of $3.25 per week for partial disability was unwarranted, since the amount authorized by the statute (2 Comp. Laws 1915, § 5440) is 50 per cent. of the difference.

2. SAME—FINDING BY INDUSTRIAL ACCIDENT BOARD.

Although the injured employee was offered more than he was earning before the injury if he would continue in certain work he was doing, a finding by the board of partial disability will not be disturbed where he testified that he could not stand the work because his arm bothered him so and he had to quit, and two physicians testified that the arm was reduced in efficiency about 30 per cent.

Certiorari to Industrial Accident Board. Submitted April 23, 1919. (Docket No. 92.) Decided May 29, 1919.

Roy Moshinski presented his claim for compensation against the Kay Salt Company for injuries received in defendant's employ. From an order denying a petition to discontinue payments for partial disability, defendant and the Royal Indemnity Company, insurer, bring certiorari. Modified, and remanded.

*John B. Coughlin,* for appellants.

BROOKE, J. Certiorari to the industrial accident board. On September 27, 1916, applicant received a severe injury arising out of and in the course of his employment. A compensation agreement was at once

On the question of compensation recoverable under the Workmen's Compensation Act generally, see notes in L. R. A. 1916A, 129, and L. R. A. 1917D, 164 *et seq.*

entered into between the parties under which the indemnifying company paid to claimant the maximum compensation of $10 per week from the date of the injury to January 8, 1918. It later developed that claimant had so far recovered from his injury that on June 12, 1917, he obtained employment with the International Harvester Company of Milwaukee, Wisconsin, where his average weekly wages amounted to $18.54. On February 20, 1918, an application was made to the board praying that compensation be fixed as for partial disability at the rate of $3.23 per week and that the excess already paid to claimant of $203.10 be credited to the employer upon payments made from and after January 8, 1918, as they became due. It appeared without dispute that the averments in the petition were true and on the 24th day of May, 1918, the board made an order to the effect that the rate of compensation should be reduced to $3.23 from March 8, 1918, during the period of partial disability and further:

"It is further ordered that compensation at the rate of Ten Dollars ($10) per week be paid applicant from the date of the last payment, January 8, 1918, to March 8, 1918. Should applicant again become totally disabled because of his injury, compensation shall be again paid at the rate of Ten Dollars ($10) per week.

"It is further ordered that respondent's prayer that certain amounts already paid applicant be refunded to them, is hereby denied."

No appeal was taken from this order. On the 15th day of August, 1918, a second application was made to the board by the insurance company in which it is set up that after May 31, 1918, claimant was receiving an average weekly wage of $22.37; that therefore he was entitled but to the sum of $1.32 per week partial disability. It is further averred that on August 7, 1918, claimant quit his employment with the International Harvester Company although he was offered

$25 per week. Petitioner asked for an order that compensation be paid to claimant at the rate of $1.32 per week from May 31, 1918, to August 7, 1918, and that all further payments or compensation be stopped on the ground that disability has ceased and the employee is able to earn the same wages he was earning at the time of the accident. Considerable testimony was taken on the second application and the board on the 24th of December, 1918, made the following order:

"The board finds as a fact from the files and testimony in the case that said applicant should continue to receive compensation in accordance with the terms of the order entered by the board on May 24, 1918, viz., $3.23 weekly during the period he is partially incapacitated in the employment in which he was engaged at the time of the accident, and $10.00 weekly should he again become totally incapacitated in such employment; the board further finds that there is no evidence in the testimony submitted in support of said petition, medical or otherwise, which would tend to show that said applicant is able to fully resume his usual employment, and, there being no testimony whatever on this point, the petition must be denied.

"It is therefore ordered and adjudged that said petition should be and the same is hereby denied, and said applicant is entitled to receive and recover from said respondents compensation at the rate of three dollars and twenty-three cents ($3.23) per week from the time payments were stopped, May 31, 1918, to the date of the hearing on said petition, November 20, 1918, in all the sum of eighty-two dollars and thirty-seven cents ($82.37), which amount shall be paid to applicant forthwith.

"It is further ordered that after November 20, 1918, said applicant is to continue to receive compensation in accordance with the terms of the order entered by the board on May 24, 1918, said order being in full force and effect at this time,"

—which is now reviewed in this court. The record shows conclusively that from May 31, 1918, to August 3, 1918, a period of nine weeks, claimant received an

average of $22.31 per week. This deducted from the sum of $25 which he was receiving when injured leaves a balance of $2.69, 50% of which is $1.35. We can find no warrant in the record for the allowance of $3.23 during this period. On August 6th claimant quit working for the International Harvester Company and started to work for the James J. Swartz Fur Company, where he earned but $12 per week. This employment continued from August 7th to September 24th, when he took employment with the Milwaukee Tanning & Clothing Company, where he was working at the time of the hearing. His wages in the latter employment according to his own testimony were $22.05 per week. Fifty per cent. of the difference between that amount and $25.00 is $1.48. We think the appellant is correct in its contention that the board had no warrant in fixing the compensation at $3.23 as for partial disability. It is asserted by appellant that the board erred in holding that there was no evidence that disability had ceased after August 7, 1918. This assertion is based upon the fact that officers of the International Harvester Company testified that at the time claimant left its employ he was able to continue doing the work he was then engaged in and his continuance there would have resulted in his receiving from and after August 7th a sum in excess of $25 per week. On the other hand claimant testified:

"I couldn't stand it any longer and my arm bothered me so that I had to quit."

The testimony of the two physicians appearing in the case upon the earlier application tends to show that claimant sustained a very severe and extensive burn which involved his left arm and left side; that there is a large area of scar tissue, some of it very deep. At the time they testified they gave it as their

opinion that claimant's left arm was reduced in efficiency about 30 per cent.

The refusal of the board to grant the order discontinuing all compensation after August 7th will not be disturbed.   The order of the board ·as made is set aside and the case remanded for further proceedings in accordance with the terms of the act.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.